IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**COLONY SPECIALTY
INSURANCE COMPANY,**

Plaintiff,

v.

**MUTUAL OF ENUMCLAW
INSURANCE COMPANY,**

Defendant.

**Civ. No. 6:15-cv-00783-MC**

**OPINION AND ORDER**

**MCSHANE, Judge:**

The issue before this Court is whether Defendant Mutual of Enumclaw Insurance

Company ("MOE") owed a duty to defend to its insured, Laurel Crossing, in a dispute in which

Plaintiff Colony Mutual ("Colony"), a separate insurer of Laurel Crossing, tendered that duty

under its own policy. Colony now seeks contribution from MOE because it contends, based on

the allegations of the underlying complaint, that MOE owed the duty as well. Colony and MOE

have accordingly filed cross-motions for summary judgment. ECF Nos. 21, 23.

The parties' cross-motions turn on one question: Does a claim in the underlying

complaint[1] for "Fraud/Misrepresentation/Failure to Disclose Construction Defects" that alleges

continuing damage arising from construction defects give rise to a duty to defend where the

relevant policy covers only property damage arising out of an accident? Because I find that the

complaint's allegations of continuing property damage qualify as covered damages under the

relevant policy language and that the misrepresentation claim at issue in this case can give rise to

---

[1] The complete list of claims from the underlying complaint follows: (1) Violations of the Oregon Condominiums
Act, ORS 100 et seq.; (2) Misrepresentation/Fraud/Failure to Disclose; (3) Breach of Contract (Implied and Express
Warranties); (4) Breach of Fiduciary Duties; (5) Negligence and Negligence *per se*. *See* Lauersdorf Decl., Ex. 1, 10–
16, ECF No. 22-1.

a claim for negligent, rather than intentional, misrepresentation, MOE owed Colony a duty to

defend. I therefore GRANT Plaintiff Colony's Motion for Summary Judgment, ECF No. 21, and

DENY Defendant MOE's Cross-motion for Summary Judgment, ECF No. 23.

## BACKGROUND

### I.    The Underlying Action

Laurel Crossing is a developer that was insured at relevant times by both Colony and MOE.[2]

Laurel Crossing purchased and developed Stillwater Condominiums in Florence, Oregon. Laurel

Crossing hired independent contractor Thomas Hornback to perform construction and development

of the condominiums. It then sold the condominiums to individual owners, and then operated the

Stillwater Condominium Unit Owners' Association (the "Association"). Lauersdorf Decl., Ex. 1

("Underlying Complaint"), ¶¶ 1, 6, ECF No. 22-1. Laurel Crossing later transferred control of the

Association to the individual Stillwater Condominium owners. *Id.* ¶ 7.

After the transfer of control, the Association sued Laurel Crossing alleging, among other

things, failure to properly supervise construction, which allegedly resulted in construction defects

and related property damage. The Association separately alleged that Laurel Crossing fraudulently

misrepresented the state of the property and failed to investigate and disclose the various defects,

which led to delays in their discovery by the Association and additional property damage from

continuing unwanted water infiltration and other similar problems.

Pursuant to its policies with Colony and MOE, Laurel Crossing sought defense and

indemnity coverage from both insurers. Colony proceeded to defend under its policy with Laurel

Crossing. MOE refused to defend based on alleged lack of coverage pursuant to MOE's

interpretation of its policy and the allegations in the Underlying Complaint. This action followed.

---

[2] The Colony Policy provides liability coverage for suits against Laurel Crossing, and has an effective period of September 15, 2006, through January 31, 2008. Lauersdorf Decl., Ex. 5 ("Colony Policy"), ECF No. 22-5. The MOE Policy includes liability coverage for suits against Laurel Crossing, and has an effective period of December 27, 2007 to December 27, 2008. Compl., Ex. A ("MOE Policy"), ECF No. 1-1.

## II.    The MOE Policy

The MOE Policy provides that MOE will "pay those sums of money that [Laurel Crossing] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." MOE Pol., 77, ECF No. 1-2. "Property damage" is defined in the MOE Policy as "physical injury to tangible property, including all resulting loss of use of that property." *Id.* at 94. Under the MOE Policy, MOE must "defend [Laurel Crossing] against any 'suit' seeking those damages." *Id.* at 77.

The MOE Policy expressly applies to property damage "only if" the damage is caused by an "occurrence," *id.*, which is defined in the policy as "an accident." *Id.* at 90. The MOE Policy includes three relevant endorsements which limit the categories of property damage to which it applies. The first endorsement excludes "Designated Construction" ("DC endorsement") and reads as follows:

> This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conduct for yourself or for others.

MOE Pol., 96, ECF No. 1-2.[3] The second endorsement excludes "Designated Work" ("DW endorsement") and reads as follows:

> This insurance does not apply to "bodily injury" or "property damage" included in the "products – completed operations hazard" and arising out of "your work" in the Schedule.

MOE Pol., 93, ECF No. 1-2.[4] The third endorsement excludes coverage occurring outside of the "Designated Premises or Project" ("DPP endorsement") and reads as follows:

---

[3] "You" and "your," in these endorsements, refers to Laurel Crossing. MOE Pol., 91, ECF No. 1-2.

[4] "Your work," in this endorsement, refers to operations either performed by Laurel Crossing itself or otherwise performed on its behalf, thus including independent contractor Hornback. MOE Pol., 91, ECF No. 1-2. "Products – completed operations hazard" refers to bodily injury or property damage arising out of "your work" save for work "that has not yet been completed." *Id.* at 90.

> This insurance applies only to . . . "property damage" . . . arising
> out of . . . [t]he ownership, maintenance or use of the premises
> shown in the Schedule and operations necessary or incidental to
> those premises; . . . or [t]he project shown in the Schedule.

MOE Pol., 94, ECF No. 1-2.

## STANDARD

This Court must grant summary judgment if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine"

if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris,*

*Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews

evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn*

*Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552

(1999)). When the moving party has met its burden, the non-moving party must present "specific

facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

Where parties file cross-motions for summary judgment, the court must "evaluate each

motion separately, giving the nonmoving party in each instance the benefit of all reasonable

inferences." *ACLU of Nev. v. City of Las Vegas,* 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation

marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n,* 605 F.3d 665, 674 (9th Cir.

2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard.").

## DISCUSSION

Colony argues that it and MOE are legal "co-insurers" for the purposes of the underlying

action, as the claims brought in that action invoked coverage under the MOE Policy, and each

insurer thus owed Laurel Crossing a duty to defend. Colony's Mot., 9, ECF No. 21. Because MOE

owed that duty, Colony asserts, the Court must determine and award to Colony the proportionate share of expenses owed to it by MOE under the doctrine of equitable contribution. *Id.*

MOE retorts that the claims against Laurel Crossing in the underlying action were not claims for "damages because of 'bodily injury' or 'property damage,'" per the MOE Policy. MOE further argues that if the claims indeed sought covered damages, they fell within three relevant exclusions: the DW endorsement, the DPP endorsement, and the common law exclusion of intentional acts.

The seminal Oregon case regarding the duty to defend is *Ledford v. Gutoski*, 319 Or. 397, 877 P.2d 80 (1994), in which the Oregon Supreme Court explained:

> Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy.
>
> In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy . . .

*Ledford,* 319 Or. at 399–400, 877 P.2d 80 (internal citations omitted).

Further, any doubt arising from an inquiry into the allegations is resolved in favor of the insured. *Schnitzer Inv. Corp. v. Certain Underwriters at Lloyd's of London*, 197 Or. App. 147, 155, 104 P.3d 1162, 1167–68 (2005).

## A.   Property Damage Allegations

The allegations in the Underlying Complaint include the following categories of what Colony argues to be "property damage" suffered by the Stillwater Condominiums: (1) "water intrusion and property damage"; (2) "damage to wood structural framing components"; (3) damaged "sheathing at roof surfaces and parapets"; (4) "failed welds at seams of PVC roof membranes"; and (5) certain

damages that "threaten the structural integrity and livability of the Stillwater Condominiums." Underlying Compl., ¶¶ 14, 17, 18, 44, ECF No. 22-1.

Colony points to the DPP endorsement as the basis for coverage of damages contained within these allegations. While the parties discuss the various claims in the Underlying Complaint at length, Colony refers particularly to the Second Claim for Misrepresentation/Fraud/Failure to Disclose, which alleges that the Laurel Crossing's misrepresentation caused a delay in discovery of defects, "thereby increasing the damages and costs of repairing or remedying them. . . . ." Underlying Compl., ¶ 44, ECF No. 22-1. Colony extends this 'exacerbation by way of omission' theme to its analysis of the Fourth Claim in the Underlying Complaint for Breach of Fiduciary Duty, which alleges that Laurel Crossing's concealment of the various construction defects plaguing Stillwater Condominiums "would result in . . . substantial loss to the Association, including property damage." *Id.* ¶ 70.

With this in mind, I turn to the Underlying Complaint to determine if the allegations therein are sufficient to give rise to a duty to defend. As a preliminary matter, I note that Colony appears to concede that the Third Claim for Breach of Contract and the Fourth Claim for Breach of Fiduciary Duties do not alone give rise to MOE's duty to defend based on the DC endorsement and the DW endorsement. *See* Colony's Resp., 8–9, ECF No. 25. My analysis therefore focuses on the first and second claims in the Underlying Complaint.

### B.   Misrepresentation Claims and the Duty to Defend

With respect to the Underlying Complaint's First Claim for Violation of the Oregon Condominiums Act and Second Claim for Misrepresentation/Fraud/Failure to Disclose, MOE argues that all allegations of failure to disclose defects of the Stillwater Condominiums are not covered because: "Under Oregon law, standard liability policies—like [MOE]'s—do not cover claims for misrepresenting the condition of property to unsuspecting buyers." Def.'s Resp. to Pl.'s Mot., 5,

ECF No. 24. This is because the MOE Policy, which covers damages because of property damage, "covers claims for damaging property, not merely for representing that damaged property is undamaged." *Id.* MOE cites several Oregon cases in an attempt to support this distinction, including *Martin v. State Farm Fire and Cas. Co.*, 146 Or. App. 270, 932 P.2d 1207 (1997).[5]

### i.   Continuing Damage

*Martin v. State Farm* considered the concept of 'continuing damage' arising from misrepresentations as potentially giving rise to a duty to defend. 932 P.2d at 1212. The Oregon Court of Appeals, in *Martin*, analyzed allegations in the underlying complaint which alleged that petroleum products from damaged underground storage tanks on a property "continued to release to and migrate in the soils at the Property." *Id.* The court found that those releases did not invoke policy coverage, and therefore did not give rise to a duty to defend, because the soils were part of property owned by the policy-holder, and therefore fell under a relevant policy exemption. *Id.* at 1212. The *Martin* court, however, alluded to possible coverage for releases that resulted in damages caused by groundwater contamination, which would not have fallen under the same exemption. *Id.* Nonetheless, the court and policy-holder specified that such damages were not alleged in the underlying complaint and the duty to defend was therefore not invoked.

In light of *Martin*, I agree with MOE's arguments only to the extent that they contend that purely misrepresenting the state of property, when sold, does not invoke the policy coverage for property damage. Beyond that, I disagree with MOE's arguments in light of the allegations in the Underlying Complaint that the delay of discovery of defects due to the misrepresentations resulted in additional property damage. Here, unlike *Martin*, the Underlying Complaint alleges continuing

---

[5] The remaining cases cited by MOE analyzing the duty to defend underlying misrepresentation claims are inapposite in that they contain factually and legally dissimilar underlying allegations. *See, e.g., General Ins. Co. of Am. v. Western Am. Dev. Co.*, 43 Or. App. 671 (1979) (undisclosed easements held by third-party burdening purchased property constituted legal rather than property damage); *see also State Bd. of Higher Ed. V. Northwestern Pac. Indem. Co.*, 69 Or. App. 456 (1984) (recovery of the difference of agreed upon value from the sale of contaminated wheat seed did not invoke duty to defend accidental property damage coverage).

covered property damage arising out of and in addition to damages arising solely from the misrepresentations. In both the First and Second Claim of the Underlying Complaint, as well as the general allegations re-alleged and incorporated throughout, allegations of continuing property damage are clearly enumerated. *See* Underlying Compl., ¶ 14, ECF No. 22-1 (defects were "continuing to cause . . . extensive property damage to both the common elements and unit interiors."). The plaintiff in the underlying action even stated that the misrepresentations resulted in a delay of investigations of the actual state of the property and caused delays in "making arrangements for needed maintenance, repairs, *and preventive measures* . . . ." *Id.* ¶31(b) (emphasis added). The express need for preventive measures clearly alleges continuing property damage.

At oral argument, MOE contended that any damages arising from the allegations of continuing damage in the Underlying Complaint simply constitute economic loss, rather than covered property damage. In determining whether the underlying allegations incur covered damages, I find persuasive *FountainCourt Homeowners' Ass'n v. FountainCourt Development, LLC et al.*, 264 Or. App. 468 (2014). In that case, the Oregon Court of Appeals considered a factually similar underlying action on an appeal of a post-judgment garnishment proceeding. *Id.* at 471. In a strikingly similar legal dispute, an insurer attempted to argue that "physical damage" from water intrusion was not "property damage" under its policy. *Id.* at 481. The homeowners' association that was seeking coverage did not deny that damage arising solely from construction defects was excluded from policy coverage, but contended that the jury in the underlying action had been clearly instructed it may separately award for physical damage from water intrusion, as here, and that the jury did just that. *Id.* 481–82. The Oregon Court of Appeals agreed. *Id.* at 482. After a thorough analysis of legal burdens and the ambit of broad policy coverage in the sorts of insurance contracts at issue in this case, the court agreed with the homeowners' association that the jury award included covered damages and did not constitute an award for purely economic loss. *Id.* at 484–85.

Based on the above analysis and the Oregon Court of Appeals' analysis and holding in *FountainCourt* that recognized allegations such as those in the Underlying Complaint may fall under "property damage," I disagree with MOE and find that the Underlying Complaint contains allegations that go beyond merely representing that damaged property is undamaged. The Underlying Complaint extended to covered property damage, therefore invoking policy coverage.

### ii.    Intentional Acts Exception and Negligent Misrepresentation

Moving beyond the dispute over covered damages, MOE next argues that the intentionality of a fraud claim necessarily nullifies coverage because the MOE Policy covers only "occurrences" which are defined as "accidents." MOE Pol., 90, ECF No. 1-2. MOE cites *Cunningham & Walsh v. Atlantic Mut. Ins. Co*, 88 Or. App. 251, 744 P.2d 1317 (1987), a case in which the Oregon Court of Appeals found that "when fraud or deceit is committed, its natural and intended consequence is to do harm and, whatever the harm might be, the conduct which brought it about is not an 'occurrence' under the policy." *Id.* at 255. Given that rule, an insurer is still "required to defend an action if any of the allegations of the complaint would entitle the insured to coverage, even if the complaint also includes allegations of conduct that would not be covered." *Farmers In. Co. v. Limbocker*, 109 Or. App. 130, 133, 818 P.2d 527 (1991). The *Limbocker* court, overturning an award of summary judgment, analyzed a fraud claim pled alongside a negligence claim and determined that the latter was enough to invoke the duty to defend. *Id.*

Colony presents no clear response to MOE's salient argument regarding the intentional acts exclusion—that a fraud claim in the underlying complaint, without more, does not entitle the insured to coverage based on the inherent intentionality of fraud. Colony instead states:

> The Underlying Complaint leaves open the possibility that Laurel Crossing was liable for negligently failing to disclose information, which resulted in worsening property damage. If, for example, Laurel Crossing knew about defects but mistakenly believed the defects would not cause property damage and thus failed to disclose them, it could be liable for negligence. If that negligence

results in worsening property damage, there is coverage under the
MOE Policy.

Colony's Reply, 5, ECF No. 26. This position, on its face, appears to conflict with the clear rule of

Oregon law that the duty to defend is activated "if the claim against the insured stated in the

complaint could, *without amendment*, impose liability for conduct covered by the policy." *Ledford*,

319 Or. at 400, 877 P.2d at 83. However, courts in this District have declined to find in similar

disputes that "the pleading of a negligent misrepresentation claim (or the pleading of facts that could

give rise to such a claim), falls within an intentional acts exclusion." *Allstate Ins. Co. v. Hudler*, No.

CV–09–544-HU, 2011 WL 1498370 at *9 (D. Or. Feb. 25, 2011) (Hubel, M.J.), *citing Wagner v.*

*Home Depot USA, Inc.,* No. CV–10–901–KI, 2010 WL 4670533, at *2 (D. Or. Nov. 9, 2010) (King,

J.).

In *Allstate v. Hudler*, Judge Hubel accepted an argument similar to that of Colony's

regarding allegations in the underlying complaint that were "capable of raising a claim based on

negligent misrepresentation . . . ." 2011 WL 1498370 at *9. The court did so based on allegations

that the misrepresentor "knew or should have known" that he was preparing documents containing

false misrepresentations. *Id.* at *8. Judge Hubel found that this was enough to potentially give rise to

an ultimate finding of negligent misrepresentation, even if the allegations were included in a claim of

intentional fraud. *Id.* at *10.

The Underlying Complaint in this case contains similar language to that of *Allstate*. It alleges

that Laurel Crossing "knew, or in the exercise of reasonable care, should have known . . . [t]hat the

construction defects . . . existed," and that the Stillwater Condominiums were suffering or would

foreseeably suffer the resulting continuing damages described elsewhere in the complaint.

Underlying Compl., ¶ 44(a)–(d), ECF No. 22-1. The allegations similarly give rise to the possibility

that Laurel Crossing was not necessarily aware of the construction defects or their likelihood to

cause continuing property damage. This is supported by the fact that Laurel Crossing used an

10 – OPINION AND ORDER

independent contractor to carry out the construction itself. Short of a complete investigation, which the complaint alleges was not performed, Laurel Crossing could reasonably have been unaware of the continuing damage to the Stillwater Condominiums. If given the opportunity, a fact-finder could have reasonably determined that Laurel Crossing negligently failed to disclose the construction defects, leading to the resulting continuing property damage.

I cannot conclude on summary judgment that the intentional acts exclusion applies to the Underlying Complaint and forecloses a duty to defend under the MOE Policy, as the allegations give rise to a potentially covered claim.

## CONCLUSION

Based on the foregoing, Plaintiff Colony's Motion for Summary Judgment, ECF No. 21, is GRANTED and Defendant MOE's Cross-motion for Summary Judgment, ECF No. 23, is DENIED. MOE must tender one-half of the defense costs paid by Colony in the underlying lawsuit, to be determined by the parties upon conferral.

IT IS SO ORDERED.

Dated this _29_ day of March, 2016.


**Michael McShane**
**United States District Judge**